**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Vermell LeGare-Doctor,<br><br>                      Debtor. | C/A No. 18-05682-JW<br><br>Chapter 13 |

**ORDER ESTABLISHING**
**ALLOWABLE POST-PETITION MORTGAGE CHARGES**

      This matter comes before the Court upon a Motion to Determine Mortgage Fees and Expenses[1] filed by Vermell Legare-Doctor ("Debtor"). Debtor and Reverse Mortgage Funding, LLC ("Creditor") dispute whether an advance for hazard insurance incurred by Creditor in April 2019 and disclosed in Debtor's bankruptcy case almost two years later should be allowed and/or cured in a Chapter 13 plan. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Based on materials presented by the parties, the Court makes the following findings of facts and conclusions of law.

**FINDINGS OF FACT**

      On January 21, 2013, Vermell Legare-Doctor ("Debtor") obtained a home equity conversion mortgage loan ("Reverse Mortgage"). The Reverse Mortgage encumbers Debtor's principal residence at 3162 Sanders Road, Charleston, S.C. ("Property"). Unlike conventional mortgage loans, Debtor is not required to remit monthly payments to repay the loan secured by the Reverse Mortgage. Instead, Debtor is contractually required to pay annual property taxes and hazard insurance premiums for the Property during the term of the Reverse Mortgage, and Debtor must live at the Property as his principal residence while the Reverse Mortgage is in place. After

---

[1] The Motion also asked the Court to set all post-petition arrearages to be addressed by a pending modified Chapter 13 plan.

Page **1** of **19**

Debtor dies, permanently moves to another residence, or fails to pay taxes or insurance premiums timely, Debtor would be in default, and the Reverse Mortgage would be subject to foreclosure.

After its origination, the Reverse Mortgage was transferred to Creditor. In 2017, Debtor failed to pay real property taxes assessed against the Property, and Creditor filed a foreclosure action on February 22, 2018, with the Charleston County Court of Common Pleas ("State Court"). Ultimately, the State Court entered a judgment of foreclosure against Debtor on August 30, 2018. Before the judicial sale of the Property, Debtor filed a Chapter 13 bankruptcy on November 5, 2018.

Because Creditor did not file a proof of claim, Debtor's counsel filed a proof of claim and various amended claims on Creditor's behalf during Debtor's bankruptcy.[2] Debtor secured confirmation of his Chapter 13 plan on April 5, 2019. Under the confirmed plan and 11 U.S.C. § 1322(b)(5), Debtor proposed to cure any default by paying Creditor, through the Trustee, monthly installment payments during the plan's sixty-month term to repay taxes, fees, and attorney's fees and costs identified in the Foreclosure Judgment and maintain future payments required by the Reverse Mortgage.

In the confirmed plan, Debtor specifically noted that the "[o]bligation is a reverse mortgage for which no monthly payments are required. The arrearage represents advances made by mortgagee." Creditor never objected to the confirmed plan and became bound by its treatment under 11 U.S.C. § 1327.

After confirmation of the plan, on March 24, 2020, Creditor filed a Motion for Relief from the Automatic Stay asserting two new defaults arising from two payments of $2,490.00 for hazard

---

[2] Creditor never filed any amended claim. Debtor's initial proof of claim for Creditor stated a debt of $294,250 with a prepetition arrears of $6,758.00.

insurance premiums advanced on April 4, 2019 and February 24, 2020, and another $3,304.42 payment for 2018 Charleston County Taxes advanced on December 17, 2019. Debtor objected to the Motion on March 3, 2020, asserting Creditor's failure to comply with Rule 3002.1(c) of the Federal Rules of Bankruptcy Procedure. Creditor thereafter withdrew the Motion for Relief.

Two months after Creditor filed its Motion for Relief, Creditor filed its first Notice of Post-Petition Mortgage Fees, Expenses, and Charges on Official Form 410S2. In the filing, Creditor listed the December 17, 2019, tax advance for 2018 taxes of $3,304.42 and the February 24, 2020, advance of $2,490.00 for hazard insurance.[3] Creditor **did not** list the April 4, 2019, hazard insurance advance ("April 2019 Advance").[4]

Creditor filed a second Notice on April 2, 2021, which only stated and claimed a hazard insurance advance made during February 2021. However, Creditor received a full refund from the insurer a few months after making the advance.[5] To date, however, Creditor has never correctly filed a Notice of Post-Petition Mortgage Fees and Expenses on Official Form 410S2 to claim the April 2019 Advance.

After filing the Notices, on August 5, 2021, Creditor again filed a Motion for Relief from Stay, which asserted a loan default because of the unpaid prepetition taxes that Creditor advanced post-petition and alleged hazard and flood insurance premiums that Creditor also advanced post-

---

[3] Debtor and Creditor now agree that the unpaid property taxes are prepetition obligations that may be paid pursuant to an amended plan. Debtor and Creditor also agree that a post-petition hazard insurance advance in the amount of $2,490.00 incurred on February 24, 2020, should be reduced to $1,789.00 because Creditor received a refund of $701.00 from the insurer. The refund appears to be due to Debtor's maintenance of insurance coverage for a portion of the coverage period that Creditor advanced.

[4] The April 2019 Advance was not correctly shown or claimed on the Notice. Instead, it was listed as part of the advance history balance appended to the filed Notice, which had 24 items listed in different totals in fine print.

[5] In the expense sheet appended to Creditor's second Notice, Creditor again listed the April 2019 Advance as an additional charge, but that advance was not shown or claimed on the face of the Notice.

petition.[6] Debtor timely objected to the Motion for Relief from Stay, and thereafter, Debtor and Creditor agreed to continue the hearing on Creditor's Motion to exchange information and reconcile payment of alleged, unpaid post-petition taxes and insurance premiums.[7] Through these negotiations, Creditor concluded that it overpaid and was entitled to refunds from the insurers that reduced Creditor's outstanding post-petition advances for hazard insurance to $1,789.00.[8]

The refunds for Creditor's hazard and flood insurance advances appear to have been due to Debtor's maintenance of hazard loss coverage as required by the Reverse Mortgage and Creditor's inaccurate assessment of Flood Map revisions by the Federal Emergency Management Agency ("FEMA") and resulting advance for flood insurance.[9] On September 22, 2021, Debtor filed a Motion to Determine Post-Petition Fees, Expenses and Charges, which provided Creditor 14 days from service to respond. In the Motion to Determine, Debtor asked that the April 2019 Advance of $2,490.00 be disallowed as late and that he be awarded the attorney's fees that he incurred for prosecuting the Motion to Determine. Creditor did not timely respond to the Debtor's Motion. It filed a response on October 20, 2021, the day before the hearing on Debtor's Motion to Determine.

On September 24, 2021, Debtor also filed a Motion to Modify Confirmed Plan[10] to increase his plan payments to repay the $3,304.42 for the advance for prepetition taxes; $2,001.83 for a

---

[6] The amount asserted in the Motion is comprised of two hazard insurance premium advances of $2,490.00 that Creditor incurred on April 4, 2019, and February 24, 2020, and a flood insurance premium advance of $2,001.83 incurred on June 7, 2021.

[7] The second Motion for Relief from Stay was ultimately withdrawn on October 29, 2021.

[8] According to Creditor's records, it advanced payment of a hazard loss premium on February 24, 2020, to pay for coverage from January 26, 2020, through January 26, 2021, in the amount of $2,490.00. On May 19, 2021, however, Creditor received a refund from the insurer in the amount of $701.00, which left a $1,789.00 balance for insurance premium advance that Creditor incurred on February 24, 2020.

[9] Debtor and Creditor also now agree that Debtor is not required to pay a flood insurance premium in the amount of $2,001.83 that Creditor advanced on June 7, 2021, because the residential structure in which the Debtor resides is not in the flood plain encroaching on the Debtor's land.

[10] The Trustee filed an objection which was scheduled at the time of the confirmation hearing, which requested the Court to set the amount of post-petition charges due to Creditor. Upon the setting of the amount, the Trustee indicated that the modified plan should be confirmed.

flood insurance advance; [11] and the remaining $1,789.00 of Creditor's February 24, 2020, advance for hazard insurance. Creditor failed to timely object to Debtor's Motion to Modify Confirmed Plan, which *does not* provide for repayment of the disputed April 2019 Advance.

After the hearing, it appears that the sole remaining disagreement between Debtor and Creditor was whether the April 2019 Advance of $2,490.00 for a hazard insurance premium should be an allowed charge and subject to repayment. According to the Debtor, the April 2019 Advance should be disallowed because Creditor never disclosed that advance within the 180-day period prescribed by Rule 3002.1(c) of the Federal Rules of Bankruptcy Procedure. Creditor argues that the advance must be allowed because Rule 3002.1 does not apply to the Reverse Mortgage, which unlike conventional mortgage loans does not require repayment through monthly installments.

**CONCLUSIONS OF LAW**

Rule 3002.1 applies in Chapter 13 cases to claims "(1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). Holders of a claim subject to Rule 3002.1 are required to file and serve "on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence." Fed. R. Bankr. P. 3002.1(c). The notice required by Rule 3002.1(c) must be served "within 180 days after the date on which the fees, expenses, or charges are incurred." *Id.* The noticing requirements imposed by Rule 3002.1 serve a critical purpose in Chapter 13 cases and ensure "that debtors are informed of new post-

---

[11] The addition of these amounts increased the arrearage to be cured by the plan to $13,849.00. This amount excludes the $2,490.00 advanced on April 4, 2019, but also includes a flood insurance premium of $2,0001.83 that is being fully refunded to Creditor and no longer needs to be cured by Debtor.

petition obligations (such as fees)." *In re Gravel*, 6 F.4th 503, 514 (2d Cir. 2021). By requiring timely disclosure of additional post-petition payment obligations, Rule 3002.1 provides debtors with a "chance to pay or contest the new obligations, which prevents lingering deficits from surfacing after the case ends." *Id.* Or as one court noted, Rule 3002.1 "does not allow the secured creditor to silently accrue additional amounts and then spring a 'gotcha' foreclosure after the debtor has completed her plan and emerged from bankruptcy protection." *In re Roper*, 621 B.R. 899, 902 (Bankr. D. Colo. 2020).

To provide the notice required by Rule 3002.1(c), subsection (d) details the method for making the timely disclosure. Under Rule 3002.1(d), the notice required by 3002.1(c) must be filed and served on the official form as a "supplement to the holder's proof of claim." Fed. R. Bankr. P. 3002.1(d); *In re Navarro*, Case No. 15-10301-SMG, 2020 WL 2843033, at *3 (Bankr. S.D. Fla. May 29, 2020) ("Indeed, Rule 3002.1 sets forth *mandatory* procedures for compliance by a creditor with a security interest in a debtor's principal residence. This includes use of Official Form 410S2 to notify the debtor and the trustee of any post-petition fees, expenses, or other charges, which 'must be filed in the same place and manner as the original proof of claim.'") (emphasis theirs). The Official Form does not provide for attachments but instead provided numerous blanks to list all additional charges and expenses.[12]

Furthermore, unlike proofs of claim initially filed with the Court, fees and charges disclosed pursuant to Rules 3002.1(b) and (c) are not subject to the presumption of validity provided by Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 3002.1(d); *In re Brumley*, 570 B.R. 287, 289 (Bankr. M.D. Mich. 2017) ("Under Rule 3002.1(d), the *prima facie* evidentiary benefits of filing a proof of claim under Rule 3001(f) do not apply to

---

[12] Creditor's Notices did not incorporate any attachments or reference them on the Official Form.

a creditor's notice of post-petition fees, which suggests that the drafters did not intend to afford creditors any special advantage with respect to supplemental fees and charges."). To this end, it has been recognized that creditors bear the burden of proof to prove that their additional post-petition fees and charges are appropriate under Rule 3002.1. *See id.* at 290 (concluding that under Rule 3002.1(e) lender bore the burden of proof to show that debtor's payment of post-petition charges was required to cure under 11 U.S.C. § 1322(b)(5)).

If the holder of a claim subject to Rule 3002.1 fails to comply with the disclosure provisions stated in Rules 3002.1(b), (c), or (g), "the court may, after notice and a hearing, take either *or both*" of the following actions:

> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i) (emphasis added).

Here, Creditor narrowly argues that Rule 3002.1 does not apply to the Reverse Mortgage because the payments imposed upon Debtor by the Reverse Mortgage for taxes and insurance are to be paid to the county taxing authority and insurers and are not contractual installments due to Creditor, and therefore, Creditor is not subject to the noticing requirements of the Rule. For the following reasons, however, the Court disagrees and concludes that Debtor is entitled to a remedy under Rule 3002.1(i).

**I.    Rule 3002.1 applies to Creditor's claim.**

Rule 3002.1 applies in Chapter 13 cases to claims "(1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). There is no

dispute that Creditor's claim is secured by a security interest in Debtor's principal residence. Thus, the key issue here is whether Rule 3002.1 applies because "the plan provides that either the trustee or the debtor will make contractual installment payments."

In 2016, the provisions of Rule 3002.1(a)(2) were amended to clarify that the rule applies not only to Chapter 13 cases in which a debtor attempts to cure a prepetition arrearage but also those cases where there is no prepetition arrearage but the debtor maintains mortgage loan payments through the provisions of a Chapter 13 plan. *See* Fed. R. Bankr. P. 3002.1(a), Advisory Comm. Notes 2016 Amend. (stating that Rule 3002.1(a) is amended to clarify that the Rule's provisions "apply whenever a chapter 13 plan provides that contractual payments on the debtor's home mortgage will be maintained, whether they will be paid by the trustee or directly by the debtor.") Rule 3002.1 is applicable here. Paragraph 2 of the Reverse Mortgage requires Debtor to pay all property charges, including taxes and applicable hazard or flood insurance premiums. Paragraph 5 states that Creditor may advance the payment of charges that the Debtor fails to pay and provides that "[a]ny amounts disbursed by Lender under this Paragraph [5 of the Reverse Mortgage] shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Agreement." In the present case, the missed tax and insurance payments were advanced by Creditor and added to the loan balance.[13] As indicated by the Motions for Relief from Stay, those amounts were treated as delinquent obligations and the basis of default. In both Motions for Relief, Creditor sought relief to foreclose on Debtor's residence. By adding the advances to the loan balance, Creditor treated them as contractual payments that Debtor owed to it.

---

[13]   Creditor also previously asserted default and sought repayment of similar tax and insurance charges due under the Reverse Mortgage loan as the basis for foreclosure and including those amounts as due in the judgment for sale, which precipitated Debtor's bankruptcy case.

In his initial confirmed plan, Debtor provided for the cure of default asserted under the Reverse Mortgage through the re-payment of those advanced amounts by Debtor through the Trustee as a prepetition arrearage and to maintain future payments due under the contract. Creditor did not object, and the plan was confirmed. In the confirmed plan, Debtor even clarified that Creditor's claim "is a reverse mortgage for which no monthly payments are required" and that the arrearage to be cured through the plan "represents advances made by the mortgagee." (Confirmed Plan, ECF No. 43.) The plain language of Debtor's confirmed plan establishes that the plan expressly provides for monthly Trustee payments to cure Debtor's arrearage to Creditor under the Reverse Mortgage and further provided for maintenance of contractual payments. (*Id*.) Similarly, in the Motion to Modify and the proposed plan, filed on September 24, 2021, Debtor proposed to treat certain tax and insurance advances made by Creditor as post-petition arrears due to Creditor through payments by the Trustee, but specifically excludes the April 2019 Advance for hazard insurance from amounts to be cured under the modified plan. Despite proper notice, Creditor did not timely object to the Motion to Modify and proposed plan, and the Trustee recommended the modified plan as confirmable if the April 2019 Advance is disallowed. Therefore, upon entry of the confirmation order, Creditor will be bound to the modified plan.[14]

Both elements triggering application of Rule 3002.1's noticing requirements are present here because Creditor's claim is secured by a security interest in Debtor's principal residence, and Debtor's plan provides for the repayment of advances that Debtor is contractually obligated to repay to Creditor under the Reverse Mortgage and because Debtor will maintain future contractual

---

[14] It has been held by this Court that a creditor's failure to object timely is deemed acceptance of the plan under § 1325(a)(5). *In re Gibson*, 556 B.R. 743, 745 (Bankr. D.S.C. 2016) ("It is well established that a secured creditor properly served with notice of a plan, who fails to object to its treatment within the objection period, is deemed to have accepted the plan."). The plan provides that "Failure to object may constitute an implied acceptance of and consent to the relief requested in this document."

payments as they become due. *See, e.g., In re Reed*, Case No. 17-52875-rbk, 2021 WL 4395821, at *2 (Bankr. W.D. Tex. Sept. 24, 2021) (recognizing that Rule 3002.1(a)(2) was satisfied where debtor's confirmed plan required the trustee to remit monthly cure payments to creditor, finding that the term "contractual installment payments" included payments to the creditor under the plan for prepetition arrearages.).[15]

The Advisory Committee Notes to Rule 3002.1 further support a broad application of Rule 3002.1 by recognizing that removal of the reference to § 1322(b)(5) in Rule 3002.1(a) meant that Rule 3002.1's "provisions apply whenever a chapter 13 plan provides that contractual payments on the debtor's home mortgage will be maintained, whether they will be paid by the trustee or directly by the debtor." Fed. R. Bankr. P. 3002.1, Advisory Comm. Notes 2016 Amend. The Advisory Committee Notes further explain that "[s]o long as a creditor has a claim that is secured by a security interest in the debtor's principal residence and the plan provides that contractual payments on the claim will be maintained, the rule applies." *Id.* There can be no dispute that the tax and insurance payments are contractually due and the amounts identified were advanced by Creditor according to the Reverse Mortgage.

The circumstances present in this case call for application of Rule 3002.1's noticing requirements, which require timely disclosure of all amounts required to cure a mortgage loan delinquency because "[t]imely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment…." Fed. R. Bankr. P. 3002.1, Advisory Comm. Notes 2011

---

[15] In *Reed,* the bankruptcy court found unpersuasive the creditor's argument that Rule 3002.1(a) did not apply because the plan must pay the creditor "contractual installment payments." The court noted that this language was added to clarify that the rule applies when the trustee or debtor makes ongoing mortgage payments "under the plan" and found that the trustee was correct that the term "contractual installment payments" includes payments to the creditor under the plan for arrearages.

Adoption.[16]

## II.    Creditor failed to comply with Rule 3002.1(c).

Rules 3002.1(c) and (d) require Creditor to disclose post-petition advances and expenses within 180 days of incurring the advance or expense by using Official Form 410S2. *See* Fed. R. Bankr. P. 3002.1(c) & (d). There is no dispute that Creditor advanced a hazard insurance premium payment in the amount of $2,490.00 to secure coverage for Debtor's residence on April 4, 2019, and that the Reverse Mortgage balance includes the advance.[17]

Creditor, however, never properly disclosed the April 2019 Advance on the Official Form, nor did it file or serve that form within 180 days of incurring the advance as required by Rule 3002.1(c) and (d).[18] Even if the Notices were considered sufficient, the disclosure was more than one year late when the June 2, 2020, Notice was filed and more than two years late when the April 2, 2021, Notice was filed. For these reasons, the Court concludes that Creditor failed to comply with the requirements of Rules 3002.1(c) and (d). *See, e.g., In re Navarro*, 2020 WL 2843033, at *3 (sanctioning mortgage lender for violating Rules 3002.1(c) and (d) by failing to timely file and serve a notice of post-petition attorney's fees on Official Form 410S2).

## III.    Debtor is entitled to the remedies provided by Rule 3002.1(i), including reasonable attorney's fees and costs.

When there is non-compliance with the noticing provisions of Rule 3002.1(c), the Court has authority to fashion a remedy under Rule 3002.1(i), including the award of reasonable

---

[16]    Despite its argument that Rule 3002.1 does not apply, Creditor in fact voluntarily filed two Notices of Post-Petition Mortgage Fees, Expenses and Charges—an action which contradicts its arguments.

[17]    Nothing in the materials presented by Debtor in the Motion to Determine Mortgage Fees and Expenses or the arguments presented at the hearing for Debtor's Motion challenged the contractual validity of the April 2019 Advance because it was not properly made under the terms of the Reverse Mortgage or any other grounds under applicable non-bankruptcy law.

[18]    The April 2019 Advance is not referenced anywhere on the face of the Official Forms filed and served by Creditor.

attorney's fees and costs. Under the Rule, the Court may "*take either or both*" of the following actions:

> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i) (emphasis added). The remedy authorized by Rule 3002.1(i)(1) appears to limit the treatment of the disputed advance *during* Debtor's pending Chapter 13 case if the creditor's failure was not substantially justified or harmless, but Rule 3002.1(i)(2) is not so limited and expands the Court's authority to provide a remedy by authorizing it to "award other appropriate relief, including reasonable attorney's fees caused by" a creditor's failure to comply with the requirements of Rules 3002.1(b), (c) or (g). *See In re Lescinskas*, 628 B.R. 377, 382 n.9 (Bankr. D. Mass. 2021) ("Rule 3002.1(i)(1) provides for a sanction unless the court determines that the claim holder's failure to provide required information was substantially justified or is harmless, but Rule 3002.1(i)(2) does not contain such an exception to the sanction set forth there.") (internal brackets and quotations omitted).

Disallowing a charge or expense under Rule 3002.1(i)(1) eliminates the requirement to repay the obligation during the Chapter 13 case, but leaves Debtor exposed to post-discharge collection of the post-petition advance. *See, e.g., In re Roper*, 621 B.R. at 903 (recognizing that additional post-petition mortgage charges disclosed to a Chapter 13 debtor during the bankruptcy would not be included in the plan and preclude discharge but "remain due and owing and the general discharge will not apply to them"). Accordingly, under the circumstances of this case, the Court believes that remedies under both subsections (1) and (2) of Rule 3002.1(i) are in order. *See,*

*e.g., In re Navarro*, 2020 WL 2843033, at *3 (providing remedies under subsections (1) and (2) of Rule 3002.1(i) because of creditor's non-compliance with Rule 3002.1(c)).

### a. The April 2019 Advance is precluded from being presented in any manner during Debtor's Chapter 13 case under Rule 3002.1(i)(1).

Whenever a claim holder fails to timely file and serve the Notice required by Rule 3002.1(c), Rule 3002.1(i)(1) authorizes a court to use its discretion to "preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case." Fed. R. Bankr. P. Rule 3002.1(i)(1). Under the safe harbor provision in Rule 3002.1(i)(1), however, the court may not preclude the claim holder from presenting the omitted information if the court determines that the failure to comply with Rule 3002.1 "was substantially justified or is harmless." *Id.*

In this case, Creditor failed to present any argument or evidence showing that its non-compliance with the disclosure requirements of 3002.1(c) "was substantially justified" or "harmless." The late disclosure has clearly prejudiced or harmed Debtor by requiring him to increase plan payments further to fully cure the default in order to prevent its assertion after case closing.

Because Creditor failed to timely and properly disclose, identify, or detail the April 2019 Advance on any timely filed and served Official Form 410S2, all evidence or materials related to the Advance constitutes "omitted information," which should have been timely disclosed within 180 days of Creditor incurring the advance. Instead of timely disclosure, the earliest reference to the Advance was made more than one year later on June 9, 2020, when Creditor included the Advance in an attachment to a Notice of Post-petition Mortgage Fees and Expenses filed and served on June 9, 2020. But that Notice only identified a post-petition advance of prepetition taxes and an insurance advance that was partially refunded later during Debtor's case. There was no

evidence indicating compliance with the requirements of Rule 3002.1(c) or (d) for proper disclosure of the April 2019 Advance.

Therefore, pursuant to its authority under Rule 3002.1(i)(1), the Court will treat the information related to the Advance made on April 4, 2019, as "omitted information" that cannot be presented during Debtor's bankruptcy case, including as grounds for objecting to confirmation, pursuing relief from stay, or in any other contested matter or adversary proceeding arising during Debtor's bankruptcy. *See* Fed. R. Bankr. P. 3002.1(i)(1); *In re Roe*, Case No. 18-50046, 2021 WL 2946167, at *5 (Bankr. W.D. Mo. July 13, 2021) (precluding presentation of evidence related to post-petition fees that were not timely or properly disclosed under Rule 3002.1 in any contested matter or adversary proceeding arising in debtor's bankruptcy case). The Court will also prohibit assertion of the lack of repayment of the advance as grounds to impair Debtor's discharge under 11 U.S.C. § 1328.

  b. **Non-payment of the April 2019 Advance may not be referenced as an act of default under the Reverse Mortgage.**

Rule 3002.1(i)(2) grants the Court expansive authority to frame a remedy—including an award of attorney's fees and costs or even punitive damages—for a lender's non-compliance with the disclosure requirements of Rules 3002.1(b), (c), and (g). *See In re Blanco*, __ B.R. __, No. 20-10078, Adv. Pro. No. 20-1005, 2021 WL 4190170, at *27 (Bankr. W.D. Tex. Sept. 14, 2021) (detailing why an award of attorney's fees and punitive damages are required to enforce the provisions of Rule 3002.1). Although providing relief under 3002.1(i)(1) will prevent Creditor's attempts to collect the April 2019 Advance in any contested matter or adversary proceeding during Debtor's Chapter 13 case, the risk of Creditor pursuing that amount *after* the Debtor completes his Chapter 13 plan exists. *See In re Blanco*, __ B.R. __, 2021 WL 4190170, at *26 ("It is well recognized that a creditor's failure to comply with the notice requirements of Rule 3002.1 can

hinder the honest debtor's right to a fresh start following bankruptcy."). The risk of an immediate foreclosure action after conclusion of a Chapter 13 reorganization because of an unpaid post-petition charge is precisely the risk that Rule 3002.1 was designed to mitigate as noted in the following Advisory Committee Notes for the Rule:

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage, *see* Rule 3001(c)(2), and the amount of the postpetition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment.

Fed. R. Bankr. P. 3002.1, Advisory Comm. Notes 2011 Adoption; *see also In re Lescinskas*, 628 B.R. at 382 ("There can be no disagreement that the purpose of Rule 3002.1(c) and (i) is to prevent precisely what has happened in this case—a debtor finding out his mortgage lender is holding him responsible for years of accumulated legal fees and other charges amounting to thousands of dollars.").

Here, the existence of the unpaid April 2019 Advance, which will not be cured under the confirmed plan because of Creditor's failure to comply with Rule 3002.1(c), leaves Debtor at risk of a default that triggers foreclosure after the close of Debtor's Chapter 13 case. *See In re Roper*, 621 B.R. at 902. Such a result directly contradicts Rule 3002.1's purpose. This is especially true under the facts of this case where Creditor failed to file an amended proof of claim; failed to properly and timely assert the April 2019 Advance in any Notice of Post-Petition Mortgage Fees and Expenses; failed to timely object to both the Debtor's Motion to Determine Post-Petition Fees, Expenses and Charges and Motion to Modify Plan; and filed two relief from stay motions that referenced the April 2019 Advance as an incident of default that provided Creditor with grounds for relief from stay to seek foreclosure.

Accordingly, to preserve the benefit of the Chapter 13 case, the Court hereby precludes Creditor from citing to or referencing the April 2019 Advance of $2,490.00 for hazard insurance as the basis for default under the terms of the Reverse Mortgage at any time after Debtor completes the currently confirmed plan or any other modified plan confirmed by the Court, both during and after the case.

However, Creditor may seek collection of the April 2019 Advance if it secures relief from stay or Debtor's bankruptcy is dismissed on other grounds and Creditor is allowed to pursue its state court remedies. Furthermore, Creditor may collect the April 2019 Advance as part of its outstanding loan balance in the event of a future foreclosure triggered by other incidents of default, such as Debtor's transfer of the Property or his death.

This Court is authorized to craft such a remedy based on Rule 3002.1(i)(2)'s plain language that allows the Court to "award other appropriate relief." This remedy is fair to both Debtor and Creditor in that it prevents Creditor from benefitting from its many failures to comply with the express requirements of Rule 3002.1; yet preserving Creditor's right to recover the April 2019 Advance in the event of further unrelated default arising after Debtor's bankruptcy concludes.

    **c. Creditor's non-compliance merits an award of attorney's fees and costs to Debtor under Rule 3002.1(i)(2).**

Rule 3002.1(i)(2) authorizes the Court to award reasonable attorney's fees and costs associated with litigating the merits of the post-petition charges assessed by Creditor pursuant to Rule 3002.1. Fed. R. Bankr. P. 3002.1(i)(2). Under the circumstances of this case, an award of attorney's fees and costs to Debtor is also appropriate. First, the Notices filed by Creditor reflected post-petition charges that appear to have been unwarranted. Critically, the advances for hazard insurance by Creditor on February 24, 2020, and February 18, 2021, appear unnecessary because they were ultimately refunded either in-part or entirely by the insurer shortly after the advance was

made, which indicates to the Court that Debtor was fulfilling his post-petition obligations under the Reverse Mortgage to a degree.

Further, Creditor's advance of a flood insurance premium should not have been made because the residential structure encumbered by the Reverse Mortgage did not sit on a revised flood plain identified on an updated FEMA flood map. Creditor's mishandling of the insurance advances made during Debtor's Chapter 13 case and its failure to comply with Rule 3002.1's disclosure requirements appear to be the primary reasons Debtor's counsel had to litigate the accuracy of post-petition charges assessed under the Reverse Mortgage. Finally, but as an aside, the Court notes that Debtor had to litigate two related Motions for Relief from the Automatic stay that were based in part on the refunded insurance advances and the improperly advanced flood insurance charge. Under these circumstances, the Court concludes that Debtor should be awarded reasonable fees and costs as requested by Debtor's Counsel in the modest amount of $770.00.[19]

## CONCLUSION

For the foregoing reasons, the Court hereby concludes the following:

(1)   Rule 3002.1 applies to the Reverse Mortgage loan in this case as provided for in Debtor's Chapter 13 plan;

(2)   Creditor failed to comply with the requirements of Rule 3002.1(c) regarding timely disclosure of an April 2019 Advance that Creditor incurred for a hazard loss insurance premium;

(3)   Creditor is precluded from presenting any information or asserting any default related to the April 2019 Advance in the amount of $2,490.00 in any contested matter or adversary

---

[19] As part of the proposed order for relief, Debtor's counsel included a statement of fees that reflected 2.0 hours of attorney time to review relevant materials and draft Debtor's Motion for Order Setting Post-Petition Arrearage along with a proposed order at the hourly rate of $375 per hour.

proceeding arising in Debtor's Chapter 13 case or in any other way as to impair the administration of Debtor's bankruptcy;

(4) Creditor is precluded from citing to or referencing the April 2019 Advance of $2,490.00 as any basis for default after the closing of Debtor's Chapter 13 case if Debtor completes the currently confirmed plan or any other confirmed modified plan;

(5) Creditor is permitted to seek collection of the April 2019 Advance from Debtor only under the following limited circumstances:

    a. Creditor secures relief from stay from the Court post-petition to enforce its rights in State Court because of Debtor's material default of any obligations under the Reverse Mortgage that is unrelated to the April 2019 Advance,

    b. after dismissal of Debtor's bankruptcy case for failure to fulfill all obligations imposed by the confirmed plan or confirmed modified plan, or

    c. after any default unrelated to the April 2019 Advance, which arises after the close of Debtor's bankruptcy case and triggers Creditor's right to pursue foreclosure or repayment under the terms of the Reverse Mortgage;

(6) The Court also concludes that the only additional post-petition charges that the Debtor must pay through a modified plan to cure the arrearage for the Reverse Mortgage is the remaining balance of $1,789.00 for Creditor's advance of a hazard insurance premium on February 24, 2020, along with the $3,304.42 for unpaid prepetition property taxes assessed against the Property in 2018 and advanced by Creditor in 2019;[20] and

(7) Within ten days from the entry of this Order, a modified plan setting forth the correct amounts to be paid to Creditor pursuant to this Order, without any other changes, may be

---

[20] These sums added to the $6,574.00 arrearage being cured through Debtor's confirmed plan total $11,847.42 (i.e., $6,754.00 + $3,304.42 + $1,789.00). The Debtor's proposed, modified plan provides for payment of about $13,849.25, which appears to be comprised of the figures that total the $11,847.42 plus the flood insurance premium of $2,001.83, which is being fully refunded to Creditor. Because the flood insurance premium is being refunded to Creditor, it should not be an additional amount cured in any modified plan.

filed and confirmed without further notice or hearing, and Creditor shall directly pay to Debtor's counsel the sum of $770.00 within ten days of the entry of this Order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**12/01/2021**



*US Bankruptcy Judge*
*District of South Carolina*

Entered: 12/01/2021